UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| CARMEN WILLIAMS, | Case No. 17-cv-01642-VC |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING SUMMARY JUDGMENT TO CARMEN WILLIAMS AND DENYING SUMMARY JUDGMENT TO NANCY BERRYHILL** |
| NANCY A. BERRYHILL, | |
| Defendant. | Re: Dkt. Nos. 17, 20 |

Carmen Williams' motion for summary judgment is granted, and the Commissioner's cross-motion for summary judgment is denied. The Administrative Law Judge's denial of benefits is reversed, and the case is remanded for further proceedings.

**I.**

The ALJ's assessment of Williams' disability was grossly inadequate. As discussed below, the ALJ failed to properly assess the opinions of a number of treating and examining sources and failed to properly assess Williams' testimony about her mental health symptoms.

**A.**

The ALJ erred by discrediting the opinion of Amy Ng, NP and Alisa Oberschelp, MD, the opinion of June Dziedzic, PsyD, the opinion of Susan Reider, LMFT, and the opinion of Susan McMann, MSW. The medical records show (and the ALJ found) that Williams has both an affective disorder (diagnosed as a major depressive disorder, an anxiety disorder, and post-traumatic stress disorder) and degenerative disc disease. *See, e.g.*, Record at 18, 430, 533-39, 544-46, 597-98, 606, 610, 616, 619, 622. Ng, Williams' primary care provider, and Oberschelp, a doctor who worked with Ng, determined that Williams' back pain (as well as foot pain)

severely limited her ability to lift, bend, sit, stand, and walk. They also opined that Williams' chronic pain and depression would "seriously interfere with [Williams'] ability to perform simple, routine work on a productive basis." Record at 578-80. Dziedzic, an examining psychologist, produced a detailed report summarizing Williams' cognitive and social limitations after reviewing Williams' medical records and administering a battery of tests. She concluded that Williams had been unable to work since 2012 because of her mental health symptoms, which included hypervigilance, social withdrawal, "intrusive thoughts of traumatic events," "fatigue, amotivation, . . . feelings of worthlessness and guilt," and recurrent suicidal thoughts. Record at 537-39. Reider, a licensed marriage and family therapist who saw Williams twelve times over the course of five months, determined that Williams' "PTSD and her depressive symptoms" had "prevented her from seeking work and further education." Reider gave Williams a Global Assessment of Functioning score of 35, which is indicative of severe mental health symptoms. Record at 544-46. And McMann, a case manager who had met with Williams three or four times in a three-month period before she completed her questionnaire, stated that Williams had difficulty concentrating during appointments, was "very socially isolated," and was "extremely limited by her depression." She stated that Williams had "daily thoughts of suicide and fits of crying." Record at 541-42.

First, the ALJ did not evaluate the weight of these opinions using the method described in 20 C.F.R. § 404.1527(c), which requires ALJs to assess six specific factors when determining what weight to give a medical source's opinion. *See also* 20 C.F.R. § 404.1527(f)(1) (noting that same factors should be applied to opinions that come from medical sources who are not acceptable medical sources). This "alone constitutes reversible legal error." *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017).

Moreover, the ALJ did not articulate specific and legitimate reasons for rejecting these opinions, as is required by Ninth Circuit precedent. *See Garrison v. Colvin*, 759 F.3d 995, 1012-

14 (9th Cir. 2014).[1] While rejecting Ng and Oberschelp's opinion, the ALJ merely stated that "[v]ery little in the claimant's record supports this level of impairment." Record at 21. This vague reference to the record as a whole is insufficient because it "fails to offer a substantive basis for [the ALJ's] conclusion." *Garrison*, 759 F.3d at 1013. The ALJ rejected the remaining opinions on the basis of similarly vague – and similarly insufficient – references to the entire record. *See* Record at 22 (arguing that Dziedzic's findings were "deeply inconsistent with the claimant's record as a whole"); *id.* (stating that Reider's opinion "simply has almost no support in the claimant's record"); *id.* ("All in all, the reports of these treaters are grossly divorced from the claimant's daily activities, and her record as a whole."). What's particularly troubling about the ALJ's generic statements about the opinions finding little support in the record as a whole is that the four opinions the ALJ rejected are themselves a significant portion of the record (not in terms of sheer pages, but certainly in terms of persuasive material). And when these opinions address Williams' mental health, each is corroborated by the other three opinions, as well as by many of the remaining medical records. *See, e.g.*, Record at 407, 440, 449-50, 463, 526, 559, 606, 608, 610, 614, 616, 638, 676. It's almost as if the ALJ rejected the record as a whole because it was not supported by the record as a whole.

The ALJ did provide a specific reason for rejecting parts of the opinions provided by Dziedzic and McMann. The ALJ rejected Dziedzic's opinion that Williams had severe cognitive limitations making focus difficult because Williams reported that one of her daily activities was reading.[2] Record at 22. Perhaps if there were evidence that Williams was reading complicated

---

[1] The ALJ almost certainly needed to provide clear and convincing reasons to reject Dziedzic's opinion, because this opinion was from an examining psychologist, and it does not appear that it was contradicted by another acceptable medical source's opinion. *See Trevizo*, 871 F.3d at 675. The ALJ almost certainly also needed to provide clear and convincing reasons to reject Ng and Oberschelp's opinion, because this opinion was from a treating medical source and co-signed by a physician within the same clinic, and it was not contradicted by another acceptable medical source's opinion. *Id.*; *see also Garrison*, 759 F.3d at 1013-14; 20 C.F.R. § 404.1502(a)(7) (defining advanced practice nurses as acceptable medical sources for claims filed after March 27, 2017). But it suffices to say that if the ALJ did not articulate specific and legitimate reasons for rejecting these opinions, she also did not articulate clear and convincing reasons.

[2] The ALJ also mischaracterized Dziedzic's opinion. The ALJ stated that Dziedzic "opined that the claimant had a serious cognitive disorder." Record at 22. Though Dziedzic did opine that

prose, or evidence that Williams was able to read without breaks for hours at a time, that evidence would have been a legitimate reason to reject Dziedzic's opinion. But the mere fact that Williams often read, absent additional detail regarding her ability to read and concentrate, is not. When an ALJ relies on a person's daily activities as evidence that the person is not disabled, the ALJ should make a specific and detailed inquiry into the claimant's actual activities. For example, in *Trevizo* the Ninth Circuit determined that the ALJ could not rely on the claimant's childcare responsibilities as substantial evidence of non-disability without a detailed record as to the scope of her responsibilities. The court explained:

> Though the ALJ repeatedly pointed to Trevizo's responsibilities caring for her young adoptive children as a reason for rejecting her disability claim, the record provides no details as to what Trevizo's regular childcare activities involved. The ALJ did not develop a record regarding the extent to which and the frequency with which Trevizo picked up the children, played with them, bathed them, ran after them, or did any other tasks that might undermine her claimed limitations, nor did the ALJ inquire into whether Trevizo cared for the children alone or with the assistance of her grandchildren or other family members. The only childcare responsibilities identified at the hearing were one-off events, such as taking the children to the doctor or attending hearings (often by phone). Absent specific details about Trevizo's childcare responsibilities, those tasks cannot constitute 'substantial evidence' inconsistent with Dr. Galhotra's informed opinion, and thus the ALJ improperly relied on Trevizo's childcare activities to reject the treating physician opinion.

871 F.3d at 664; *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (noting that a "critical difference[] between activities of daily living and activities in a full-time job [is] that a person . . . is not held to a minimum standard of performance, as she would be by an employer."); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). The ALJ did not engage in a detailed assessment of Williams' reading; in fact, the ALJ engaged in essentially no analysis.

---

Williams had impaired cognitive functioning, Dziedzic stated that Williams' impaired cognitive functioning "*cannot* be attributed to intellectual deficits and may be attributed to interference from depression and post trauma symptoms." Record at 537 (emphasis added).

The ALJ also discredited McMann's opinion that Williams was "very socially isolated" because Williams "admi[tted] that she is close to her extended family, and her adult children." Record at 22. But the fact that Williams is close to her family, absent any detail about her social interactions with these family members, is not a legitimate reason to discredit McMann's opinion. *See Trevizo*, 871 F.3d at 676. In Williams' function report, which the ALJ appears to have relied upon, Williams said that she spoke with family on the phone "maybe twice a day." Record at 287. This is not at all inconsistent with being social isolated. And in that very same function report, Williams noted that she "sometimes [had] a fear of going outside [and] meeting new people." *Id.* at 289.

## B.

The ALJ also erred when she rejected Williams' testimony regarding the severity of her symptoms associated with her mental health impairments. The ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" and did not identify any evidence of malingering. Record at 21. Thus, the ALJ could reject Williams' testimony about the "severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15.

The ALJ found that Williams testimony regarding her mental health was not credible for a number of reasons: before the alleged onset date, Williams was "described as depressed, but within normal limits of speech and behavior"; one source "assigned the claimant a Global Assessment of Functioning ('GAF') score of 70, indicative of only mild symptoms"; Williams declined treatment for depression on one instance in March 2013; Williams responded to medication; Williams did not attend treatment long enough to generate sufficient records to support her claim; one record described her as focused, engaged, and with excellent insight and judgment; and as late as 2015, treating sources stated that there was no evidence that Williams had a formal thought disorder. Record at 22.

First, the ALJ erred because she did not identify "which parts of the claimant's testimony were not credible" and address why those specific statements were not credible. *Treichler v.*

*Commissioner of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014). The ALJ discredited Williams' "allegations of mental health impairment" without identifying any specific statements that should be disbelieved. Record at 22.

Second, the ALJ did not provide clear and convincing reasons for finding Williams' testimony was not credible. Most of the ALJ's reasons for not crediting Williams' testimony do not in fact provide any basis to disbelieve Williams. The fact that Williams was "within normal limits of speech and behavior" in 2008, four years before the alleged onset date, does nothing to discredit Williams' testimony regarding her symptoms after she alleges she became disabled. The record the ALJ relies on to support the premise that Williams declined treatment for depression in fact states that Williams and her doctor discussed "her stressors[ – ]and there are many[ – ]and how to handle them." Record at 507-08. Though Williams stated during this appointment that she was "not interested in resources" for depression, and stated that she only wanted a prescription for Celexa because of her pain, these statements do little to suggest her testimony is not credible, given the record shows that she was repeatedly seeking out treatment for her mental health needs during that same period. *See, e.g.*, Record at 535, 544, 572, 621. The fact that Williams had a "partial response" to Prozac likewise does little to diminish Williams' credibility; a person can receive some benefit from medication and still have work-prohibitive limitations. *See* Record at 430. And the fact that Williams did not have a formal thought disorder says little about Williams' affective disorder; a formal thought disorder (or disorganized thinking) is a defining symptom of psychotic disorders, but it is not a common symptom of affective disorders (also called mood disorders). *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, Schizophrenia Spectrum and Other Psychotic Disorders: Key Features that Define the Psychotic Disorders (5th ed. 2013), https://doi.org/10.1176/appi.books.9780890425596.dsm02.[3]

---

[3] The assessment the ALJ relied on to show that providers reported that Williams did not have signs of a formal thought disorder also stated that Williams was "isolated" and "cried during most of the session." Record at 604. Unlike disorganized thinking, both social withdrawal and sadness are hallmark symptoms of a major depressive disorder, a type of affective disorder. *See*

As already discussed, the record suggests that Williams repeatedly sought out mental health treatment. But even if the ALJ's determination that Williams did not attend sufficient treatment is credited as factually accurate, noncompliance with medical treatment or conservative medical treatment is not a legitimate reason for rejecting a claimant's symptom testimony if the claimant has a "good reason" for noncompliance or conservative treatment. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (1996). Williams had at least three good reasons for only undergoing limited treatment: First, Williams was transient and homeless, which meant she often had to restart treatment with a new therapist because she has moved. Record at 42, 598. Second, Williams' pain limited her mobility, which made it hard to travel to appointments. Record at 43-44, 45, 47-48, 606, 610. Third, Williams' traumatic history and her mental health symptoms made seeking out treatment – or even leaving the house – difficult. *See, e.g.*, Record at 42, 289, 606.

The ALJ also relied on evidence that Williams was given a Global Assessment of Functioning score of 70 on one occasion, and that Williams was described as having excellent insight and judgment on another occasion. But the Ninth Circuit has made clear that ALJs should not cherry pick information from a claimant's record for evidence of normal functioning when assessing a claimant's mental impairments. *See Garrison*, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). Moreover, the evidence cited by the ALJ is at least partially consistent with Williams' testimony; the medical source who stated that Williams had excellent insight and judgment and was focused and engaged also stated in the same report that Williams "requires intensive case management, medical care, regular therapy and access to resources for people with disabilities." Record at

---

Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, Depressive Disorders: Major Depressive Disorder (5th ed. 2013), https://doi.org/10.1176/appi.books.9780890425596.dsm04.

573-74.

In short, the ALJ's reasons for discrediting Williams' testimony either do little to diminish her credibility, are not legitimate reasons to discredit Williams' testimony under Ninth Circuit precedent, or are in fact consistent with her testimony. They are certainly not clear and convincing.[4]

## II.

The only difficult question in this case is whether the case should be remanded for further proceedings, or whether the case should be remanded for an award of benefits. The ALJ did a very bad job assessing the record in this case, and the Commissioner has a very high bar to establish that Williams' mental health limitations (particularly in combination with her back pain) are not disabling given that a number of treating and examining sources have determined that Williams' limitations are disabling. But there are legitimate "conflicts and ambiguities in the record" regarding the scope and duration of Williams' mental health and mobility limitations, given the third-party function report provided by Williams' co-worker, Veronica Forbes' psychiatric assessment, and the psychiatric assessment at the Westside Community Mental Health Center. *Treichler*, 775 F.3d at 1101, 1105-07; *see* Record at 273-82, 430, 572-75. Because it is appropriate for the Commissioner to decide issues related to the scope and duration of Williams' limitations where there are clear ambiguities, further review would be useful in this case. *Id.* at 1101, 1107.

But Williams has already waited far too long to get a fair review of her application. Therefore the Commissioner must decide within 15 days of this ruling whether additional proceedings before an ALJ are necessary. If no proceedings are necessary, the Commissioner must make a final decision within 45 days of this ruling. Any further proceedings before an ALJ

---

[4] The ALJ also made a number of other errors that this order does not address in detail. For example, the ALJ also did not properly assess Williams' testimony about her physical limitations. And even though the ALJ acknowledged that Williams did not earn enough as a telemarketer for that work to qualify as substantial gainful activity, the ALJ improperly decided to consider this job as past relevant work. *See* 20 C.F.R. § 404.1574(b)(3)(i)-(ii); Record at 49.

must be completed within 60 days of this ruling, and if that decision is partially favorable or unfavorable, the Commissioner must make a final decision within 30 days of any appeal by Williams from the ALJ's decision.  *See Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004); *Beeman v. Colvin*, No. 2:16-CV-01811-VEB, 2017 WL 3158742, at *7 (C.D. Cal. July 25, 2017); *see also* Soc. Sec. Admin., Hearings, Appeals, and Litigation Law Manual I-4-6-5 (2016) [https://perma.cc/5FZQ-PGQV] (describing SSA procedures for complying with time-limited court remand).  In the unlikely event the Commissioner determines again on remand that Williams is not eligible for benefits, and Williams appeals that decision, that case could perhaps be related to this case under Local Rule 3-12.  Moreover, if a future case is adjudicated by this court, Williams can file a motion (or stipulate with the Commissioner) to shorten the time for the Commissioner to serve an answer and provide a transcript of the administrative record, shorten the time for the Commissioner to respond to the plaintiffs motion for summary judgment, and shorten any other deadlines.

**IT IS SO ORDERED.**

Dated: March 1, 2018

VINCE CHHABRIA
United States District Judge